Annette CARMICHAEL, Individually and as Guardian for Keith Carmichael, an incapacitated adult, Plaintiff,

v.

KELLOGG, BROWN & ROOT SERVICES, INC., Halliburton Energy Services, Inc. and Richard Irvine, Defendants.

No. 1:06 CV 507 TCB.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 19, 2006.

Davis Kingsley Loftin, Peter A. Law, Peter A. Law, P.C., Atlanta, GA, Keenan R.S. Nix, Nix, Graddock & Crumpler, PC, Decatur, GA, for Plaintiff.

Jonathan R. Friedman, McKenna Long & Aldridge, Atlanta, GA, Kurt James Hamrock, McKenna Long & Aldridge, Washington, DC, for Defendants.

### ORDER

BATTEN, District Judge.

## I. Background

On May 22, 2004, Sergeant Keith Carmichael, a soldier in the United States Army, was serving as a military escort for a convoy of trucks allegedly owned and operated by Defendants Kellogg, Brown & Root Services, Inc. and Halliburton Energy Services, Inc. Carmichael was a passenger in a tractor-trailer driven by Defendant Richard Irvine, a civilian who, according to Plaintiff, was an employee of both Defendants.

While traveling from Logistics Support Area Anaconda to Al Asad, Iraq, Irvine lost control of the tractor-trailer and drove off the road, whereupon the tractor-trailer overturned in a ravine. Despite wearing a seatbelt, Carmichael was partially ejected from the cab of the tractor. His head and chest were pinned between the tractor and the ground. Six to seven minutes passed before rescuers could dislodge his body. During this time he experienced a loss of oxygen to his brain. As a result, he suffered massive injuries and is now in a permanent vegetative state.

On February 1, 2006, Carmichael's wife, Plaintiff Annette Carmichael, individually and as her husband's guardian, filed this action in state court, alleging that Irvine negligently operated the tractor-trailer at an excessive speed and failed to maintain control of the tractor-trailer, thereby causing the accident. She claims that the corporate Defendants are vicariously liable for Irvine's allegedly negligent conduct under the doctrine of respondeat superior. She also contends that they are directly liable for negligently selecting, training and supervising Irvine.

All three Defendants have filed motions to dismiss the complaint, arguing two grounds. First, Defendants contend that Plaintiff's claims are nonjusticiable under the political question doctrine. Second, Defendants contend that as military defense contractors they are immune from liability under the combatant activities exception to the Federal Tort Claims Act ("FTCA").

## II. Discussion

### A. Standard on Motion to Dismiss

The law in this Circuit governing motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is well settled. Dismissal of Plaintiff's claims is suitable only when no construction of the factual allegations will support the cause of action on the basis of a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993).

### B. Defendants' Motions to Dismiss

#### 1. Political Question

■ The political question doctrine is a function of the separation of powers among the three branches of government, and it "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986).

In *Baker v. Carr*, the Supreme Court set forth six elements indicative of a nonjusticiable political question:

(1) a textually demonstrable constitutional commitment of the issue to a coordinate political department;

(2) a lack of judicially discoverable and manageable standards for resolving it;

(3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion;

(4) the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government;

(5) an unusual need for unquestioning adherence to a political decision already made; or

(6) the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). These tests are "probably listed in descending order of both importance and certainty." *Vieth v. Jubelirer*, 541 U.S. 267, 278, 124 S.Ct. 1769, 158 L.Ed.2d 546 (2004). At least one of these elements must be evident for the political question doctrine to apply. *Baker*, 369 U.S. at 217, 82 S.Ct. 691.

Defendants contend that the first element is implicated because Plaintiff's complaint necessarily raises issues that are committed to the discretion of the political branches of government. Defendants argue that because the route and speed of convoys are set by the military and not by civilian drivers, the conduct of the military and its handling of supply convoys used to support ongoing military operations would necessarily be questioned were this case allowed to go forward.

Defendants also argue that the second factor applies to this case because no judicially manageable standards exist for the resolution of the issues. Defendants claim that if this case is not dismissed, the Court will be required to evaluate the conduct of both the military and Defendants without having any standards with which to do so.

Finally, Defendants claim that the third and fourth *Baker* factors apply because the standards of interaction between the military and civilian contractors in a combat zone require initial policy decisions clearly committed to the discretion of the political branches, and a judicial decision calling into question the conduct of the United States concerning its ongoing military efforts in Iraq would express a lack of respect due to the coordinate branches of government that oversee those war efforts.

In support of their argument, Defendants cite several cases barring claims because of the political question doctrine, including *Nejad v. United States*, 724 F.Supp. 753 (C.D.Cal.1989); *Bentzlin v. Hughes Aircraft*, 833 F.Supp. 1486 (C.D.Cal.1993); *Zuckerbraun v. Gen. Dynamics Corp.*, 755 F.Supp. 1134 (D.Conn. 1990); *WHITAKER v. KELLOGG BROWN & ROOT, INC.*, No. 405–CV–78, 2005 WL 2303546, 2006 U.S. Dist. LEXIS 45708 (M.D.Ga. July 5, 2006); and *Smith v. Halliburton Co.*, No. H–06–0462, 2006 WL 25213262006 U.S. Dist. LEXIS 61980 (S.D.Tex. Aug. 30, 2006).

■ The Court has reviewed the cases cited by the parties, as well as several other authorities, and concludes that the court in *Lessin v. Kellogg Brown & Root*, No. H–05–01853, 2006 U.S. Dist. LEXIS 39403 (S.D. Tex. June 12, 2006), best states the test for cases in which a member of the United States military is injured or killed as a result of the alleged negligence of a government defense contractor working with the military: the plaintiff's claims are barred by the political question doctrine if "military decision-making or policy would be a necessary inquiry, inseparable from the claims asserted." *Id.* at *7.

In *Lessin*, a member of the United States Army was providing a military escort for a commercial truck convoy. While en route to Kuwait, one of the convoy

trucks suffered an equipment malfunction. The truck stopped at the side of the route and Lessin attempted to assist the driver. While doing so, he was struck in the head by the ramp assist arm for the truck and suffered a traumatic brain injury.

In support of its motion to dismiss plaintiff's complaint as nonjusticiable under the political question doctrine, the defendant cited *Nejad, Bentzlin* and *Zuckerbraun.* The court correctly distinguished these cases on the ground that in each case, the court explicitly recognized that plaintiff's claims necessarily implicated military decision-making or policy.

*Smith v. Halliburton Co., supra,* also relied upon by Defendants here, is distinguishable on the same basis as *Nejad, Bentzlin* and *Zuckerbraun;* the plaintiff's claims, if allowed to proceed, would have required the court to "second-guess the decisions of the United States military, even though the suit is ostensibly against only military contractors." 2006 WL 2521326 at *5, 2006 U.S. Dist. LEXIS 61980 at *20.[1]

The other case relied upon by Defendants is *Whitaker,* which was decided less than a month after *Lessin.*[2] The *Whitaker* case involved a soldier who was providing an armed escort for a military supply convoy. He stopped his vehicle on a bridge over the Tigris River after a vehicle in front of him hit the guard rail and fell off the bridge. Another driver struck Whitaker's vehicle from behind, knocking it close to the edge of the bridge where the guard rail had been destroyed. Whitaker tried to extricate himself from the vehicle, whereupon he fell into the river and drowned. The court found that because the convoy operation was planned by the military and the military determined the placement of vehicles in the convoy, the speed of the convoy and the distance between vehicles in the convoy, inquiries regarding military decision-making would be inextricable from the plaintiffs' claims.

■ The Court respectfully disagrees with the holding in *Whitaker* and chooses instead to follow the holding in *Lessin.* The Court finds that at this stage of the proceedings it is not yet certain whether inquiries into military decision-making would be necessitated by Plaintiff's claims. The discovery period has just begun, and because of the limited facts, it is impossible to say with certainty whether this case will involve a nonjusticiable political question. For example, it is conceivable that at the time of the accident Defendant Irvine was driving the truck within the speed limit set by the military yet in a manner that was negligent in some other respect. In that event, the political question doctrine would not necessarily bar Plaintiff's claims.

Because the Court cannot at this stage of the proceedings determine that any of the factors set forth in *Baker* apply to Plaintiff's claims, Defendants' motions must be denied to the extent they are based upon the political question doctrine. If additional facts appear during the discovery period that are germane to Defendants' political question argument, Defendants may renew their motions to dismiss on this ground.

---

[1] The court in *Smith* granted the defendants' *renewed* motion to dismiss, which was filed after discovery was conducted. The Court had previously denied the defendants' original motion to dismiss—also predicated on the political question doctrine—because of its reluctance to dismiss the complaint "[a]t this early stage of the litigation." *See Smith v. Halliburton Co.,* No. H–06–0462, 2006 U.S. Dist. LEXIS 30530 at *14 (S.D.Tex. May 16, 2006). This Court shares the same reluctance.

[2] The opinion in *Whitaker* does not cite the *Lessin* decision.

## 2. Federal Tort Claims Act

■ Defendants also argue that Plaintiff's state law claims are preempted by federal law—the combatant activities exception to the Federal Tort Claims Act ("FTCA")—and therefore barred.

The FTCA constitutes a limited waiver of sovereignty by the United States from civil suit and damages, with certain exceptions. One such exception is the combatant activities exception, which excludes "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during a time of war." 28 U.S.C. § 2680(j).

Defendants acknowledge that the express terms of the FTCA provide a waiver of immunity (and exceptions to that waiver of immunity) only to the United States Government, not private parties. However, Defendants contend that in two cases—*Koohi v. United States*, 976 F.2d 1328 (9th Cir.1992), and *Bentzlin v. Hughes Aircraft*, 833 F.Supp. 1486 (C.D.Cal.1993)—the combatant activities exception to the waiver of immunity has been extended to government contractors.

To consider Defendants' argument, it is necessary to analyze not only *Koohi* and *Bentzlin*, but also the Supreme Court opinion upon which the immunity defense provided by those two cases is founded: *Boyle v. United Technologies Corporation*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988).

David Boyle was a U.S. Marine helicopter copilot who was killed when his helicopter crashed during a training exercise. Although he survived the impact of the crash, he was unable to escape from the helicopter, and drowned. His father sued the Sikorsky Division of United Technolo-gies Corporation ("Sikorsky"), which built the helicopter for the United States.

Plaintiff presented two theories of liability under state tort law. First, he alleged that Sikorsky had defectively repaired a device called the servo in the helicopter's automatic flight control system, which allegedly malfunctioned and caused the crash. Second, he alleged that Sikorsky had defectively designed the copilot's emergency escape system: the escape hatch opened out instead of in (and was therefore ineffective in a submerged craft because of water pressure), and access to the escape hatch handle was obstructed by other equipment.

The Supreme Court framed the issue as follows: "This case requires us to decide when a contractor providing military equipment to the Federal Government can be held liable under state tort law for injury caused by a design defect." 487 U.S. at 502, 108 S.Ct. at 2513 (emphasis added). Stated differently, the Court considered whether the plaintiff's state law tort claims were preempted by federal common law, despite the absence of federal legislation specifically immunizing government contractors.[3]

The Court held that in a few areas involving "uniquely federal interests," state law is preempted and replaced, where necessary, by federal law if a "significant conflict" exists between an identifiable federal policy or interest and the operation of state law, or if the application of state law would frustrate specific objectives of federal legislation. In such cases, the content of the federal law is prescribed by the courts (absent explicit statutory directive).

Applying this two-step process to determine whether the plaintiff's state law

---

**3.** It is important to note that the government contractor defense created by *Boyle* results in the preemption of certain state law causes of action, not a grant of immunity to contrac-tors. In footnote 1 of its opinion in *Boyle* the Court expressly stated that it was not addressing the issue of immunity, "as it is not before us." 487 U.S. at 505 n. 1, 108 S.Ct. 2510.

claims were preempted, the Court first considered whether the subject matter at issue was an area of uniquely federal interest. The Court identified the area at issue as "the civil liabilities arising out of the performance of federal procurement contracts." 487 U.S. at 506, 108 S.Ct. 2510.

The Court then found that the state law-imposed duty of care (the duty to equip helicopters with the sort of escape-hatch mechanism that the plaintiff claimed was necessary) conflicted with the duty imposed by the Government contract (the duty to manufacture and deliver helicopters with the sort of escape-hatch mechanism shown by the specifications).

Next, the Court had to determine whether the conflict between the state tort law and the area of uniquely federal interests was "significant." The Court expressed concern that, absent some limiting principle, conflicts between state tort law and areas of uniquely federal interests would too often be deemed "significant," resulting in preemption of state law.

As an example, the Court offered a hypothetical in which a federal procurement officer orders, by model number, a quantity of stock helicopters that happen to be equipped with escape hatches opening outward. In such a case it could not be said that the Government has a significant interest in that particular feature because the Government, i.e., the procurement officer, gave no consideration to the outward-opening feature of the escape hatch when he placed the stock order for the helicopters. Thus, in such a case it could not be said that the conflict between state tort law and "the civil liabilities arising out of the performance of federal procurement contracts" was "significant."

Rather, there must be a limiting principle to identify those situations in which a "significant" conflict with federal policy or interests exists. The Court found such a limiting principle in the discretionary func-

tion exception to the FTCA. That exception exempts the Government from civil liability on any claim based upon the Government's exercise or performance, or the failure to exercise or perform, a discretionary function. 28 U.S.C. § 1346(b).

The Court stated that the selection of the appropriate design for military equipment used by our Armed Forces is "assuredly a discretionary function" since it often involves "not merely engineering analysis but judgment as to the balance of many technical, military, and even social considerations, including specifically the trade-off between greater safety and greater combat effectiveness." 487 U.S. at 511, 108 S.Ct. 2510.

Having waded through the foregoing analysis, the Court held that state tort law that imposes liability for design defects in military equipment is displaced where (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about dangers in the use of the equipment known to the supplier but not to the United States.

Having described the Supreme Court's holding in *Boyle*, the Court now looks at the two cases cited by Defendants—*Koohi* and *Bentzlin*—which purport to be premised upon *Boyle*.

In *Koohi*, a U.S. warship equipped with the Aegis air defense system mistook a civilian Iranian airplane for an Iranian F-14 and shot it down, killing all 290 persons aboard. The plaintiffs—heirs of some of the deceased passengers and crew—sued the United States for negligent operation of its warship and sued the weapons manufacturers for design defects in the Aegis system.

Citing *Boyle*, the court held that the claim against the defense contractors was

preempted—not by the FTCA's discretionary function exception to immunity, but by the FTCA's combatant activities exception, 28 U.S.C. § 2680(j). Thus, at the outset it should be noted that the government contractor defense created in *Boyle* differs from the defense created in *Koohi.* The former was rooted in the discretionary function exception to the FTCA's waiver of government immunity, whereas the latter was rooted in the combatant activities exception.

The court's reasoning in *Koohi* was that one of the purposes of the combatant activities exception is to recognize that during wartime, no duty of care is owed to those against whom military force is directed. The court reasoned that imposing liability on the civilian manufacturer of a weapons system used in an accidental shooting of a civilian aircraft "would create a duty of care where the combatant activities exception is intended to ensure that none exist." *Id.* at 1336–37.

Significantly, most of the Ninth Circuit's opinion in *Koohi* is devoted to issues other than whether the plaintiffs' state law tort claims against the government contractor should be preempted by federal law. The majority of the opinion addresses (1) whether the political question doctrine barred all of the plaintiff's claims, and (2) whether the *government* was immune to the plaintiffs' claims under the FTCA and the Public Vessels Act.

Just one paragraph of the court's opinion in *Koohi* is devoted to the issue of whether the plaintiffs' claim against the defense contractors was preempted in accordance with *Boyle.* And that one paragraph is conclusory, not analytical.

Moreover, the court focused on the fact that no duty of care is owed to those against whom military force is directed, which is understandable because the force at issue in that case was directed by the Government against a perceived enemy (an Iranian F–14 aircraft). Here, Plaintiff's husband was not injured because by the United States because he was perceived as its enemy; rather, Sergeant Carmichael was a United States soldier/citizen injured (allegedly) by a private contractor.

Finally, *Koohi* represents an expansion of the holding in *Boyle* that the Supreme Court may or may not have intended. And *Koohi* is not binding in this circuit.

For all of these reasons, this Court is not inclined to follow the Ninth Circuit's opinion in *Koohi.*

The other case cited by Defendants that purports to be based upon the Supreme Court's holding in *Boyle* is *Bentzlin v. Hughes Aircraft Company,* a district court opinion from the Central District of California. In *Bentzlin,* the plaintiffs were family members of six Marines who were killed in combat during Operation Desert Storm in the course of the Persian Gulf War. The Marines were riding in a vehicle toward enemy Iraqi forces when a Maverick AGM–65D missile, fired from a U.S. Air Force A–10 aircraft, struck the vehicle and killed the Marines. Plaintiffs claimed that a product defect caused the missile to deviate from its intended target and strike the Marines.

Recognizing *Boyle's* bar of state tort law *design* defect claims, the plaintiffs alleged that their claims arose from a *manufacturing* defect. But the court dismissed the action anyway, holding that *Boyle's* government contractor defense extended to both design and manufacturing defect claims.

Central to the court's well-reasoned holding in *Bentzlin* was its finding that allowing state tort law claims based upon the Maverick missile's alleged defective condition would necessitate the disclosure of the missile's design, which would contravene the Government's strong interest in

preserving the secrecy of its weaponry. Obviously, such a finding would tend to compel the conclusion that, in accordance with the test prescribed in *Boyle*, plaintiffs' claims were preempted (since those claims, if allowed, would create a substantial conflict between state tort law-imposed duties and the Government's obvious, and uniquely federal, interest in preserving the secrecy of its weaponry).

Also important to the court in *Bentzlin* was the fact that the Government had intervened in the case and moved to dismiss under the political question and state secrets doctrines. The court recognized the "longstanding rule" that liability for manufacturing defects exists against government contractors "unless the government has formally taken a position that such a suit should not be maintained." *Id.* at 1491 n. 8.

Significantly, none of these factors is present in the instant case. It does not yet appear that allowing Plaintiff to proceed with her state tort law claims would contravene the Government's interest in preserving military secrets. And the Government has not intervened in this case and moved to dismiss under the political question or state secrets doctrines.

Two district courts—both from the Southern District of Texas—have recently distinguished *Bentzlin* and allowed claims to proceed against military contractors: *Fisher v. Halliburton*, 390 F.Supp.2d 610 (S.D.Tex.2005), and *Lessin, supra.*

In *Fisher*, the court distinguished *Boyle* and *Koohi* on the ground that they presented claims involving complex, allegedly defective equipment provided by government contractors to the United States for military use, in circumstances, i.e., the Government's procurement process, "which inevitably implicates nuanced discretion and sophisticated judgment by military experts." *Id. at* 616. Noting that the plaintiffs' claims did not involve any allegations that the Defendants had supplied equipment, defective or otherwise, to the military, the court concluded that "extension of the government contractor defense beyond its current boundaries is unwarranted." *Id.*

In *Lessin*, the plaintiff, like the Plaintiff's husband in this case, was a soldier who was providing a military escort for a commercial truck convoy allegedly owned, operated or controlled by Defendant. While attempting to assist the driver of a truck that had suffered an equipment malfunction, Lessin was struck in the head by the ramp assist arm for the truck and suffered a traumatic brain injury. 2006 U.S. Dist. LEXIS 39403 at *1–2.

Lessin sued Kellogg, Brown & Root, alleging that it was negligent in inspecting, maintaining, and repairing the truck that injured him, and in supervising the driver who was operating the truck. Lessin also alleged that the truck driver was negligent in using the ramp assist arm of the truck, and in failing to warn Lessin.

The court denied the defendant's motion to dismiss, finding that the "vital distinction" between that case and *Fisher*, on the one hand, and *Koohi* and *Bentzlin*, on the other, was the military's role in the incident at issue:

In both *Koohi* and *Bentzlin*, the injuries at issue arose from the United States' use of weapons during combat. Thus, as the court held in *Fisher*, "each of these cases involved claims involving complex equipment acquired by the Government in its procurement process, which inevitably implicates nuanced discretion and sophisticated judgments by military experts." *Id.* at 616. Such military decision-making is not implicated here, where, instead of manufacturing weapons, which were then procured and utilized by the military in combat, Defendant itself provided a convoy service. Additionally, in *Koohi*, the court was

also concerned with the lack of any duty of reasonable care owed to a perceived enemy during combat. This case, on the contrary, concerns the duty of care owed by a private corporation to United States citizens, and the concern noted by the court in *Koohi* is inapplicable to this case.

In the absence of additional authority, and in light of the distinctions between the *Koohi* and *Bentzlin* cases and the case at bar, the Court declines to extend the combatant activities exception. Accordingly, Defendant's motion to dismiss this case as barred by the combatant activities exception to the FTCA is denied. Again, dismissal is without prejudice to Defendant's right to renew the motion if facts adduced in discovery so warrant.

2006 U.S. Dist. LEXIS 39403 at *14–15.

As with the issue of the applicability of the political question doctrine, the Court finds that the district court's opinion in *Lessin* is persuasive and should be followed. Furthermore, *Koohi* and *Bentzlin* represent expansions of the holding in *Boyle* that the Supreme Court may or may not have intended. And neither case is binding in this circuit.

Accordingly, the Court concludes that Defendants have failed to show that as a matter of law the combatant activities exception to the FTCA's grant of immunity applies to this case and that Plaintiff's claims therefore are preempted and should be dismissed. As with Defendants' motion to dismiss based upon the political question doctrine, if additional facts appear during the discovery period that are germane to Defendants' FTCA argument, Defendants may renew their motions to dismiss on this ground.

### III. Conclusion

For all of these reasons, Defendants' motions to dismiss [4 and 6] are DENIED.